Hey please the court, my name is Alex Hernandez, federal defenders of Eastern Washington and Idaho on behalf of Mr. So Happy the appellant. The probation search that was conducted in this case was invalid because there was no probable cause to believe that Mr. So Happy lived at the residence that was searched. Nor was there a basis to search the residence based on Ms. Maricela Mora's conditions of supervision. The Fourth Amendment requires that a search warrant be issued in order to search an individual's residence. There are exceptions to that and one of those are warrantless searches that are authorized by conditions of parole or probation. But before officers can search a probationer's home they have to have probable cause that the probationer lives at that residence. This court has identified four elements that assist in establishing probable cause. One of those is that there's no facts indicating that the probationer lives somewhere else, that the officers directly observe facts that give them good reason to believe that probationers living at an unreported residence. Was there any evidence at all of just what his status was in the house? I mean had he been there overnight? Had he been there? The evidence in the record, Your Honor, shows that one of the co-residents indicated that he had visited the residence in the past, was a friend of the family, and then had dinner there the night before. And was not staying at the house? I'm sorry? Did you say and was not staying at the house? That's correct, Your Honor. But somebody else, a prisoner said he was staying at the house. Yes, Your Honor. There was a criminal informant who was in custody at the time who had had altercations with Mr. Sohappi, who told the officers, the DOC officers, that Mr. Sohappi was living at that residence. Now if he wasn't staying, did anyone raise the question of whether he has standing? If he isn't? No, Your Honor, that was not raised at the district court level, nor was it raised here. And also I had a similar question with regard to the second issue, that is, whether there was, the search was justified by Ms. Mora's probation. Is there a standing problem with regard to that issue? Your Honor, again, that wasn't raised, so I would submit to the court that the government's precluded from arguing that. Those kinds of standing issues are not If the record suggests that, and that wasn't completely flushed out either, Your Honor, whether or not he would have had standing if the probation violated, if she had in fact, had not violated her conditions of supervision. And the reason for that is because the record reflects that he had been an overnight guest, or excuse me, a guest and had dinner there, but whether or not he was an overnight guest had not been flushed out at the district court level. I don't understand that. I mean, it wasn't, the district court, what did the district court hold? The district court held that the facts before the officers were sufficient to establish that Mr. Hillhappy was living there. Relying what, on this prisoner statement? In my, in my opinion, Your Honor, I believe that the court held, gave the statement by the There hadn't been, at least from the record, any evidence presented of his history of providing reliable information in the past. The court determined that the prisoner had motives to falsify information about Mr. Sohappy. He was not a co-resident of the residence where Mr. Sohappy was located. So in my opinion, there was not enough information provided or corroborated from that informant to establish that Mr. Sohappy was a residence. The district court relied on both grounds, didn't it? I mean, it relied first on probable cause to believe it was his residence, and second on the fact that there was reason to believe that, that Attorney Mora had violated her conditions. That's correct, Your Honor. The district court did rely on the facts that the officers had at the time to establish probable cause, as well as a violation of Ms. Mora's condition. However, Ms. Mora's condition, the condition that the court indicated she violated was the condition that she abide with all instructions written or oral submitted by the Department of Corrections officer. It was made to the court that the question, however, doesn't relate or is not necessary to monitor her compliance with supervision. So it was beyond what was necessary to monitor her terms of supervision, and she could refuse to answer that. There was no restriction that she not have any contact with Mr. Sohappy, and so that question that who is in the house, who's the friend in the house, really had nothing to do with her terms of supervision, and she had a right to refuse that, to answer that question. Not only that... Is he residing here, just is he, who's in the house? That's correct. And she said, well, he's in the house. What the record indicates is that the officers never asked either Ms. Laura Luna, who's the mother of Ms. Mora, or Ms. Mora, who were co-residents there, if he was living there. That was never asked. I thought the mother specifically said he wasn't. That's correct, but it was never asked by the officers, is he living there or not, and she indicated he was just staying there. No, I thought the mother said he wasn't staying there. No, that's correct, Your Honor. The mother said he's not staying there. And even though she wasn't asked, just in the context of, you know, what do you know about this guy? Well, he's a friend of the family, came to dinner, he's not staying here. That's correct, Your Honor, and that was the morning of the, I believe, the arrest. In addition, it's our position, Your Honor, that Ms. Mora did comply with her conditions of supervision if the term abide with instructions, including that she answer all questions. She answered the question that Mr. Sohappy was the person in the house prior to entering the house, and therefore, she had complied with, at least in our mind, had complied with her conditions of supervision. There was no violation and there was no basis to search the resident based on her terms of supervision. If you want to reserve any time, you can do so. Excuse me, Your Honor? If you want to reserve any time, you may do so. I'd like to reserve time now. Three minutes. Thank you. May it please the Court, Alexander Eckstrom, on behalf of the appellee, United States of America, Your Honor, to deal with one of the first issues, to deal first with the issue of standing, which was raised by the plaintiff, Ms. Mora. And I think that the government did address that issue with respect to the second matter, that being. Where? For Seneceros. In our brief, we cited to the defendant, Mr. Sohappy, didn't have the ability to assert Ms. Mora's Fifth Amendment privileges with respect to the defendant, Mr. Sohappy's, And so the question is, what is her condition of parole on this following instructions? And the interpretation of that is that Ms. Mora's condition of parole is that could be informed by her Fifth Amendment rights, even if he's not raising her Fifth Amendment rights, right? It could be. And we there cited the, responded to defendant's citation to the Saccio case. I believe that's on the page before in our brief. Where her remedy is if the information gathered results in a new criminal charge, she has the ability to preclude the use of that statement in a further criminal proceeding. However, we don't believe that the defense has cited authority that says that she doesn't have to answer the inquiries made by her probation officer. Does that go against Murphy? Supreme Court has this discussion saying, well, when somebody answers a probation officer's question, we assume it's voluntary. So the remedy really isn't suppression later. The remedy is for the person simply not to answer. Yes. And in this case, the case cited Saccio states that while they can choose not to answer when they do, the remedy is the suppression of the statement. And in this case, the defendant hasn't cited to authority that says that the condition is unconstitutional. And it would defeat the purpose of probation here if she doesn't have to truthfully answer the inquiries put to her. In fact, I've misstated. The word truthfully doesn't appear in the conditions, rather that she comply with verbal instructions presented by the community corrections officer. As I understand Murphy and the problems it reflects, as applied here, I mean, if the rule had said you have to answer questions put to you, I mean, then the Fifth Amendment issue would be raised directly, there might be a standing problem and so on. But our question is whether this vague or a more general condition should be read as encompassing that requirement when there might be Fifth Amendment problems if it did. And the government's position is that there is not, specifically in this case, because the question asked is simply whether an individual is present. And that would not be inculpatory in and of itself. It just simply wants to know whether the individual is present. If the question is, is there a gun on the premises or something like that, that would be inculpatory. But she has some responsibility for harboring Mr. So Happy. Only if the further question is asked of her whether she knew that he was wanted. But is that the way the Fifth Amendment works? That when the question becomes inculpatory, the government's position would be any follow-up questions regarding her knowledge of his status would become inculpatory. His simple presence on the premises. The presence of somebody that she knows and the officers both know shouldn't be there? She doesn't, she's not prohibited from her conditions of release which are included in the record from associating with Mr. So Happy. Well, I'm not talking about a condition of release. I'm talking about legal exposure for harboring somebody who is in violation of probation or in this instance actually is a felon because he's a felon in possession of a gun. And in this case, as the reports of the officers make clear, her later statements were that she had no idea that he was wanted, no idea that he had a firearm and she was warned and released as a result after they went in. But in this case, it's the government's position that the initial question of, you know, who's there is not itself inculpatory. But if she would put in the stand and took the Fifth Amendment under those circumstances, I assume she could do that, no? When she knows it's going to lead someplace or could though, it could lead someplace. It doesn't even have to be actually inculpatory. It doesn't have to be that she's actually been guilty. It's that somebody could think she was, right? Certainly, if she were put on the stand, she could. Yeah. So isn't it, why do we have a different standard here in terms of how you would interpret the condition? That's all we're talking about. It's different here because it furthers the probation's requirement to simply know who's present. If the rule is interpreted that broadly, probation simply doesn't get to. Well, I mean, the problem may be that the conditions weren't written very specifically. I mean, as I say, this is all just an interpretive problem. If it had been written, if there were a rule that said you have to answer questions, we'd have a different problem. But there is no such rule. And the government's position is that the instructions are sufficiently written when it indicates comply with verbal instructions. In addition, she also blocks... What was the instruction? The instruction, they ask her a question. Was she instructed to answer it? They ask her a question. Okay, what was the verbal instruction? Verbal instruction is, who's here? That's a question. Certainly. And the government's position is that, although perhaps not specifically as drafted, instruction covers a question. How? Tell me how. A question is an instruction to an individual, who is here. You're asking for a response. You're being instructed to answer. Do you want to address the first issue? Certainly. The defense argues that there is no probable cause specifically under Howard. The government's position is that this fact pattern is different than Howard and the other cases cited in Howard, such as Watts, for the following reasons. First of all, we have an issue of recency. The defendant was released sometime on the evening of the 23rd. As of the, he was instructed to report the morning following his release. As of the 24th, he hasn't and is in violation. Later on the afternoon of the 24th, there's an attempt to locate him at the address he's given. He's not there. The same day, the information comes in through Mr. Diaz's mother regarding the altercation alleged at that time to have occurred also on the 23rd. So we have an individual who's not in compliance, information indicating that that person has potentially committed a new offense with a firearm. And the information is given at the same time from the same individual, Mr. Javier Diaz, that the defendant is now residing with Ms. Mora. This is, he provides an address which is more precise than one sees in Howard, where one's given a block of apartments containing 100 apartments, but the CI in that case doesn't know the number. And in this case, probation has contacted him at that residence in the past. And so it's, again, consistent with the information. The fact that Ms. Mora initially refuses and then says he is there before entrance is made, but more importantly, the recency of this takes it out of cases of Howard where a month or even in this, at the end, seven weeks of surveillance showed nothing to say that Mr. Howard was actually residing at the apartment of his girlfriend. I see that I'm short on time, so I would say nothing further unless the court has questions of me. You say that Mr. Javier, was that his name? Javier Diaz, Your Honor. Yeah, Diaz, said that So Happy was residing at Mora's place? In fact, I believe the chrono note says living with, and that is the note from CCO Heisey that was made on the 25th. Well, he was in prison, right? Or in jail? He was. The other guy had just been released? I mean, the defendant in this case. Had been released between 36 and 48 hours earlier. So how would he know where he was living? He was in jail. He had been out of jail until the morning of the 25th, and his statement to Officer Heisey was that the defendant was over at his residence on the 23rd, which would match with Mr. So Happy's release date. So he could have stayed overnight one night, maybe, with Ms. Mora, right? Talking about, well, there was one overnight that Mr. Diaz could have known about? Yes. Well, since he had contact on the 23rd, he may not have known about a night that had occurred, but rather the intention to stay there. There was a potential for two nights. That's the most he could know of that? Yes. Okay. Thank you very much. Your Honor, the condition that Ms. Mora abide by all instructions, verbal and written, submitted by the probation officer, is vague. It encompasses too many things, Your Honor, and it should be read in a narrow fashion in order to avoid any constitutional issues. And I think the court hit the nail on the head when addressing that with counsel. In addition, Your Honor, I know the government places a lot of emphasis on the recency of the events. However, the recency of events do not lend themselves to support the conclusion that, or a belief that there's probable cause that Mr. So Happy was living at the residence. There simply just wasn't enough time, and certainly just as easily supports the proposition that he was just visiting friends since he'd just been let out of jail. There was no indication that he'd ever lived there before. The indication from the officer in this case was that he had contact one time at that residence before. We don't know when, but no indication that he'd been living there in the past. He'd already provided another address where he was living, Your Honor. And again, the reliance on Mr. Diaz as far as a credible informant in this case just doesn't provide any basis, considering with all the other facts that there's probable cause to believe that Mr. So Happy was there. Thank you. Thank you very much. Thank you, counsel. The case of United States v. So Happy is submitted.
judges: Canby, Thompson, Berzon